# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

GEORGE LEE,

    Plaintiff,                               CASE NO. 08-CV-10220

v.                                       DISTRICT JUDGE BERNARD FRIEDMAN
                                            MAGISTRATE JUDGE CHARLES BINDER

OUELLETTE MSP,
Medical Service Provider,
PETERSON, Registered Nurse,
PULA, Registered Nurse,
SAMUEL TEED, Regional II
Health Care Service,
J ARMSTRONG, Bureau
of Health Care Service,

    Defendants.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
## PURSUANT TO 28 U.S.C. §§ 1915A(b), 1915e(2)(B), & 42 U.S.C. § 1997e(c)(1)

### I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the case be *sua sponte* **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

### II.    REPORT

    **A.**    **Introduction**

At the time Plaintiff George Lee filed this *pro se* civil rights action, he was a state prisoner incarcerated at Camp Branch in Coldwater, Michigan. He was paroled in late January 2008, and now resides in Flint, Michigan. The complaint alleges that the health care staff at Camp Branch

violated Plaintiff's constitutional rights and existing prison policies when they failed to adequately treat a hemangioma[1] that had developed on Plaintiff's back. The complaint names as defendants three medical service providers (Defendants Ouellette, Peterson, and Pula) and two supervisory corrections officials who were responsible for responding to the grievances Plaintiff submitted regarding this situation (Defendants Teed and Armstrong). Plaintiff seeks injunctive relief as well as compensatory and punitive damages.

On February 27, 2008, the case was referred to the undersigned magistrate judge for pretrial proceedings. On March 31, 2008, Plaintiff's application to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915 was granted. Now, having screened the complaint, the Court determines that a Report and Recommendation is warranted.

**B.	Standard of Review**

**1.	Screening Requirement**

This case is subject to screening under several provisions of the United State Code. Pursuant to 28 U.S.C. § 1915A, 28 U.S.C. § 1915(e)(2)(B), and 42 U.S.C. § 1997e(c)(1), a prisoner civil rights case where the plaintiff is proceeding IFP is to be screened by the court as soon as practicable and *sua sponte* dismissed if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

Although last year the United States Supreme Court clarified certain provisions of the Prison Litigation Reform Act of 1995 ("PLRA"), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e *et seq.*, rejecting several of the Sixth Circuit's interpretations of the Act, no part of the

---

[1] A hemangioma is "a usually benign tumor made up of blood vessels that typically occurs as a purplish or reddish slightly elevated area of skin." *See* http://medical.merriam-webster.com/medical/hemangioma.

2

Court's ruling altered the screening procedure. In fact, the Court began its opinion by confirming that the PLRA "mandates early judicial screening of prisoner complaints . . . ." *Jones v. Bock*, ___ U.S. ___, 127 S. Ct. 910, 911, 166 L. Ed. 2d 798 (2007).

### 2. Failure to State a Claim

To determine whether a complaint fails to state a claim and is therefore subject to dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must view the complaint in a light most favorable to the plaintiff, accepting as true all well-pled factual allegations. *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007) (citing *United States v. Moriarty*, 8 F.3d 329, 332 (6th Cir. 1993)). The court need not accept as true legal conclusions or unwarranted factual inferences contained in the pleadings. *Id.* (citing *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). To survive the motion, "the complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Id.* (citing *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

When the court screens a complaint where a plaintiff is proceeding without the assistance of counsel, it is required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). Rule 8(a) sets forth the basic federal pleading requirement that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). "Rule 8 requires only that the complaint give the defendant fair notice of the claim and its supporting facts." *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001). Despite this relatively low threshold, a complaint must nevertheless contain more than legal labels, conclusions, and a recitation of the elements of a cause of action; it must also contain "enough facts to state a

claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* \_\_\_U.S.\_\_\_, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).

The elements of a claim under 42 U.S.C. § 1983 are: (1) the violation of a right secured by the federal Constitution or federal law that was (2) committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).

**C.    The Complaint**

Plaintiff's allegations span a one-month time period from March 6, 2007, when he first noticed a "bump" on his back and asked to be seen by health care at Camp Branch, to April 7, 2007, when Plaintiff was transported to Community Health Center of Branch County and the "bump" was surgically removed, tested, and found to be a hemangioma which measured 2.3 by 2.7 centimeters. (Compl. ¶¶ 9-24 & attached Surgical Pathology Report (unnumbered exhibit).) More specifically, Plaintiff states that on March 6, 2007, he asked to be seen by health care because he "busted" a bump on his back and it turned red and started bleeding. (Compl. ¶ 9.) He was seen by Defendant Nurse Peterson[2] and was given a bandage to put over the wound. On March 14, 2007, Plaintiff was seen by Defendant Peterson again, who measured the bump, gave him a bandage and antibiotic ointment, and told Plaintiff that he would put in a request that "M.S.P. Ouellette take a look at it." (*Id*. ¶ 10.)

On March 21, 2007, Plaintiff requested health care and saw both Defendant Nurse Peterson and Defendant Nurse Pula. (*Id*. ¶ 11.) The following day, March 22, 2007, Plaintiff was seen by Defendant Medical Practitioner Ouellette, as well as Nurse Peterson and Nurse Pula. (*Id*. ¶ 12.)

---

[2]Sometimes in the complaint Defendant Peterson's last name is spelled "Petterson." For the sake of consistency, I will use the spelling that appears on the docket.

Plaintiff avers that Defendant Ouellette "stated that she could cut the bump off, but she [would] rather someone else with more experience to [sic] do so." (*Id.*)  When Plaintiff told her that he was concerned about his physical health, she told him to kite health care again if it continued to bleed and grow.  (*Id.*)

On two more occasions between March 22 and March 28, Plaintiff requested and received medical attention from the three health care defendants, who told Plaintiff that they were sending pictures of the wound to Lansing to receive further instruction.  (*Id.* ¶¶ 13-14.)  On March 29, 2007, Plaintiff saw Defendants Pula and Ouellette, who prepared a wound culture and sent it to the MDOC lab for testing.  It was found negative for staphyloccoccus infection.  (*Id.* ¶ 18; Lab Results attached to Compl.)  On April 2, 2007, Plaintiff began experiencing numbness near the wound. (*Id.* ¶ 19.)  The following day, Plaintiff saw Nurse Peterson, who offered him aspirin and told him that they were waiting to hear from Lansing on what to do.  (*Id.* ¶ 20.)

On April 7, 2007, the wound began to bleed more than before, and Plaintiff was taken to the hospital where a doctor asked if he would like it to be surgically removed.  Plaintiff answered in the affirmative, so the doctor numbed the area, removed it with a scalpel, and "used a laser to burn the spot on the skin where the bump was at to stop the bleeding."  (*Id.* ¶ 24.)

Based upon these facts, the complaint alleges that "M.S.P. Ouellette, R.N. Pula, and R.N. Peterson all refused to give Plaintiff proper treatment for his condition.  All three Health Services members recklessly contributed to a harmful condition which could have resulted in actual or a potential harm to Plaintiff."  (*Id.* ¶ 28.)  Plaintiff also claims that these three defendants caused a delay in treatment because of their deliberate indifference to his serious medical needs, which violated his constitutional rights.

Plaintiff submitted a grievance against all three medical defendants and appealed the denial of the grievance through all three steps of the process. (*See* grievance docs., attached to Compl.)

## D. Analysis & Conclusions

### 1. Claims Against Grievance Respondents

Plaintiff alleges that when Defendants Teed and Armstrong responded to his grievances, they failed to comply with a Michigan Department of Corrections Policy Directive "by not furthering their investigation and obtaining additional information necessary to make an appropriate and accurate response after claiming that Plaintiff's condition was an [sic] non-emergent situation." (Compl. ¶ 36.)

I suggest that Plaintiff has failed to state a claim against Defendants Teed and Armstrong. First, the violation of a state policy does not give rise to a federal civil rights claim. *See Sweeton v. Brown*, 27 F.3d 1162, 1165 (6th Cir. 1994) (en banc) (Michigan prison regulations did not create federal Due Process rights and were not actionable under § 1983). Second, it has long been decided that corrections officials are not liable under § 1983 for merely taking part in providing responses to administrative grievances. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ([as against defendants whose only involvement was the denial of administrative remedies], [t]here is no allegation that any of these defendants directly participated . . . in the claimed . . . acts . . . ."). *See also Alder v. Correctional Medical Services*, 73 Fed. App'x 839, 841 (6th Cir. 2003).

Accordingly, I suggest that the complaint fails to state a claim against Defendants Teed and Armstrong.

### 2. Claims of Deliberate Indifference Against Medical Personnel

Prison authorities may be sued for deliberate indifference to the serious medical needs of prisoners under the Eighth Amendment because such indifference constitutes the unnecessary and

6

wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The defendants' conduct or lack of conduct, however, must demonstrate a knowing indifference to serious medical needs. *See, e.g., Hicks v. Frey*, 992 F.2d 1450, 1454-57 (6th Cir. 1993). A prison official exhibits deliberate indifference by intentionally denying or delaying access to medical care. *Estelle*, 429 U.S. at 104-05. "Deliberate indifference, however, does not include negligence in diagnosing a medical condition." *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995). Similarly, differences of opinion between a plaintiff and his doctor regarding his diagnosis and treatment do not state an Eighth Amendment claim. *Estelle*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

In this case, Plaintiff does not dispute that he was seen numerous times by the medical defendants during the four weeks that he had a "bleeding bump" on his back. Instead, his claim is that the defendants prolonged the problem by not sending him more quickly to a doctor who could remove it. When a plaintiff brings a claim for delay in medical treatment, however, he must allege that the delay had a detrimental effect. *See Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001) (stating that "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed" (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir.1994))). In this case, where Plaintiff specifically stated in the complaint that the defendants' actions "recklessly contributed to a harmful condition which *could have* resulted in actual or a potential harm to Plaintiff," (Compl. ¶ 28 (emphasis added)), I suggest that Plaintiff has failed to state a claim of deliberate indifference.

Moreover, I suggest that here, where Plaintiff's own description of the events reveals that he received medical attention from Defendants Peterson, Pula, and Ouelette at least eight times

7

during a one-month period for his condition, he has failed to state a claim of deliberate indifference to his serious medical needs. *See McFarland v. Austin*, 196 Fed. App'x 410, 411 (6th Cir. 2006) ("as the record reveals that McFarland has received some medical attention and McFarland's claims involve a mere difference of opinion between him and medical personnel regarding his treatment, McFarland does not state a claim under the Eighth Amendment"); *White v. Correctional Medical Services*, 94 Fed. App'x 262 (6th Cir. 2004) (where the essence of plaintiff's claims was that he disagreed with the defendants' approaches to his medical treatment, dismissal of complaint for failure to state a claim was affirmed); *Selby v. Martin*, 84 Fed. App'x 496, 499 (6th Cir. 2003) ("the record reveals that [plaintiff] not only received a medical evaluation by a nurse and a physician, he also received instructions with regard to daily care of his abrasions. Thus, the record clearly reveals a competent and conscientious course of medical treatment, and [plaintiff's] dissatisfaction with his treatment does not state a claim under the Eighth Amendment").

**E.     Conclusion**

Accordingly, I suggest that Plaintiff's complaint be *sua sponte* dismissed for failure to state a claim, because no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint.

**III.     REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932

F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

|  |  |
|---|---|
| Dated: April 4, 2008 | s/ *Charles E Binder*<br>CHARLES E. BINDER<br>United States Magistrate Judge |

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, served on George Lee by First-Class Mail, and served on U.S. District Judge Friedman in the traditional manner.

Dated: April 4, 2008          By    s/Mimi D. Bartkowiak
                                                                                               Law Clerk to Magistrate Judge Binder